UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRENDA JERNIGAN,
    Plaintiff,

v.

CITY OF BRIDGEPORT POLICE DEPT.,
    Defendant.

No. 3:19-cv-00731 (MPS)

### INITIAL REVIEW ORDER

Plaintiff Brenda Jernigan brings this action *pro se* against the City of Bridgeport Police Department. Ms. Jernigan contends that she was subjected to an unreasonable search in violation of her rights under the Fourth Amendment. She also alleges that the search was the result of racial profiling, in violation of her rights under the Fourteenth Amendment. (ECF No. 1.) She has filed a motion to proceed *in forma pauperis* together with her complaint. (ECF No. 2.) For the reasons set forth below, the motion to proceed *in forma pauperis* is DENIED without prejudice and Ms. Jernigan's claims against the City of Bridgeport Police Department are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

    **I.**    **In Forma Pauperis Status**

A litigant may proceed *in forma pauperis* if she "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). The decision to allow a party to proceed *in forma pauperis* is committed to the sound discretion of the trial court. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 217–18 (1993). In exercising this discretion, courts consider whether the burden of paying the fees for filing and service would either hamper the party's ability to obtain the necessities of life or force her to abandon the

1

action. *See Adkins v. E.I. Dupont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948); *Potnick v. Eastern State Hospital*, 701 F.2d 243, 244 (2d Cir. 1983). Ms. Jernigan's motion to proceed *in forma pauperis* is not sufficient to determine whether she meets that standard. The motion lists specific monthly expenses totaling $1,572. (ECF No. 2 at 5−6.) It asserts that her total monthly obligations equal $5,000 and identifies additional general expenses including hospital bills, utilities, and credit card bills. (*Id.* at 6.) It does not provide an estimated monthly payment for those accounts. (*Id.*) Thus the motion does not provide a basis to verify the total obligations Ms. Jernigan reports. (*See id.* (listing $50 as the total for "Gas bill per month" and $150 for "Electric bill per month," but also listing "U.I Illuminating" and "Gas Co." as "other outstanding loans or debts" without a total).) Further, although the motion represents that Ms. Jernigan "lost her job" and "became homeless" because of the illegal search, it lists $500 in monthly rent and $1,800 in monthly income from employment. It also lists income from welfare and social security totaling $975. (ECF No. 2 at 4.) Overall, Ms. Jernigan lists income totaling $2,775 and verifiable monthly obligations totaling $1,572. The Court cannot conclude that requiring her to pay the filing fee would pose an undue burden, and the motion is DENIED without prejudice.

Within thirty days, Ms. Jernigan may file an updated motion to proceed *in forma pauperis*. The updated application must (1) list specific amounts for each debt or other monthly obligation; (2) list specific amounts, even if the amount is $0, for Ms. Jernigan's assets such as her bank accounts; and (3) list accurate amounts for Ms. Jernigan's income, including listing income from her position with the Bridgeport Police Department in the "unemployed" section if she no longer receives that income. Failure to file an updated motion to proceed *in forma pauperis* within thirty days will result in dismissal of the case without prejudice without further notice.

**II.     Legal Standard**

Although I have denied without prejudice Ms. Jernigan's motion to proceed without paying the filing fee, I nonetheless address the allegations in her complaint to provide her with guidance on the requirements for pleading a cognizable claim. Section 1915(e)(2) provides that the Court must dismiss a complaint filed with an *in forma pauperis* motion if it "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Court must construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006). A *pro se* plaintiff, however, must meet the standard of facial plausibility. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).

**III.    Allegations in the Complaint**

Ms. Jernigan's complaint contains few factual allegations, but it attaches and references an Affidavit of Illegal Discriminatory Practice that Ms. Jernigan previously filed with the State of Connecticut Commission on Human Rights and Opportunities (CHRO). (*See* ECF No. 1 at 7–10 ("CHRO Compl.").) I consider that affidavit together with her complaint in this case. *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.") In the interest of construing the complaint liberally, I will not treat the City of Bridgeport's response to her CHRO affidavit, which she also attaches (ECF No. 1 at 13–16), as part of her complaint. Ms. Jernigan did not complete the portion of the civil rights complaint form asserting a basis for the Court's subject matter jurisdiction. (ECF No. 1 at 2.) Because she asserts claims against state or local officials for violating her rights under the Fourth and Fourteenth Amendments, I will construe her complaint as attempting to state a claim under 42 U.S.C. § 1983.

Ms. Jernigan alleges Bridgeport Police illegally searched her person and vehicle in a parking lot without reasonable suspicion or probable cause on November 9, 2017. (CHRO Compl. at 1.) She was in her vehicle with a male passenger waiting to exit the parking lot at 3880 Main Street, Bridgeport, CT, when a black SUV pulled in front of her and blocked her from leaving. (*Id*. at ¶ 4.) A white male police officer exited the SUV and shouted at Ms. Jernigan to get out of her car. (*Id*. at ¶ 6.) Approximately four additional police cars and officers arrived. (*Id*.) A female police officer searched Ms. Jernigan, and a male officer searched Ms. Jernigan's male passenger. (*Id*. at ¶ 7.) A police officer, identified only as "Badge number 610," along with another officer, searched Ms. Jernigan's car. (*Id.* at ¶ 8.) "[T]hey found marijuana in . . . aluminum foil in the console." (*Id*.) Ms. Jernigan states that, although the marijuana did not

belong to her, the officers ticketed her for possession of marijuana. (*Id*. at ¶ 9.)[1] Ms. Jernigan was not charged with a vehicle infraction. (*Id*.) Ms. Jernigan alleges that the officers did not have reasonable suspicion or probable cause to stop, search, or detain her, and that the stop was a result of racial profiling. (*Id*. at ¶ 10; *see also* ECF No. 1 at 3.)

**IV.     Discussion**

Ms. Jernigan alleges that the police stopped, detained, and searched her in violation of her rights under the Fourth and Fourteenth Amendments. I construe her complaint to bring claims under 42 U.S.C. § 1983. To state a claim under § 1983, the plaintiff must allege that a person acting under color of state law deprived her of a right secured by the Constitution or laws of the United States. Even construed liberally to identify any plausible cause of action, Ms. Jernigan's complaint fails to state a claim upon which relief may be granted.

**A.  Defendant City of Bridgeport Police Department**

The only defendant identified in the complaint is the City of Bridgeport Police Department. A municipal police department is not a "person" subject to suit within the meaning of 42 U.S.C. § 1983. *Petaway v. City of New Haven Police Department*, 541 F. Supp. 2d 504, 510 (D. Conn. 2008); *see also Rose v. City of Waterbury*, No. 3:12-CV-291 (VLB), 2013 WL 1187049, at *9 (D. Conn. Mar. 21, 2013) (dismissing the Waterbury Police Department as a defendant in a § 1983 suit because "Connecticut General Statutes contain no provision establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued . . . it is the municipality itself which possesses the capacity to sue and be sued."). Accordingly,

---

[1] Ms. Jernigan attached a copy of her ticket to her complaint in this case. (ECF No. 1 at 6.)

Ms. Jernigan's claims against Bridgeport Police Department are dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. §1915(e)(2)(B)(ii).

### B. Claims against the City of Bridgeport and Police Officers in their Official Capacities

Ms. Jernigan's complaint arguably attempts to assert claims against the City of Bridgeport and the police officers who stopped her and conducted the search. Municipal entities are subject to suit under § 1983 in some circumstances. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) ("Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies."). Claims against municipal employees in their official capacities are treated as claims against the municipality itself. *See Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) ("[A] judgment against a public servant in his official capacity imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond." (quotation marks omitted)). A plaintiff seeking to establish municipal liability must show that the deprivation of her federal rights was attributable to the enforcement of a municipal "policy or custom." *Monell*, 436 U.S. at 694. Thus, "[t]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quotation marks and citations omitted). "A plaintiff may satisfy the policy or custom prong in one of four ways: by alleging the existence of (1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or (4) a failure to

properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Aquino v. City of N.Y.*, No. 1:16-CV-1577, 2017 WL 384354, at *3 (S.D.N.Y. Jan. 25, 2017) (internal quotation marks and citation omitted).

Here, Ms. Jernigan does not allege that the officers stopped her or conducted the search pursuant to a formal policy. She also does not allege any facts suggesting a "custom" or "failure to train." As a result, she has not stated a cognizable claim against the City of Bridgeport or against the police officers in their official capacities.

### C. Claims against the Police Officers in their Individual Capacities

Ms. Jernigan's complaint also arguably attempts to assert claims against the police officers in their personal capacities. State and local officials sued in their personal capacity are persons for purposes of § 1983. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). "Personal capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). Liability in a personal capacity suit can be demonstrated by showing that the official caused the alleged constitutional injury. *See id*. at 166.

#### 1. Fourth Amendment Claim

Ms. Jernigan has plausibly alleged that the individual police officers violated her rights under the Fourth Amendment. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures shall not be violated . . . ." U.S. Const. amend. IV. The Amendment protects against unreasonable searches of one's property, including vehicles, by government officials. *See, e.g.*, *United States v. Chadwick,* 433 U.S. 1, 15–16 (1977) (holding that warrant was required to search arrestee's locked footlocker

7

once it was seized by police). Police officers may stop and detain a motorist when they have "at least articulable and reasonable suspicion . . . that either the vehicle or an occupant is . . . subject to seizure for violation of law." *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). "[A] police officer may as a matter of course, order the driver [or passenger] of a lawfully stopped car to exit [the] vehicle." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997).

Ms. Jernigan contends the police officers had no reasonable or articulable suspicion and no probable cause to stop, search, or detain her against her will. (CHRO Compl. at 10.) Under both federal law and Connecticut law, probable cause to search is demonstrated where the totality of circumstances indicates a "fair probability that contraband or evidence of a crime will be found in a particular place." *Walczyk v. Rio,* 496 F.3d 139, 156 (2d Cir. 2007) (internal quotation marks and citation omitted); *State v. Vincent,* 229 Conn. 164, 171, 640 A.2d 94, 98 (1994) (noting that valid search requires "probable cause to believe that the particular items to be seized are connected with criminal activity or will assist in a particular apprehension or conviction" and "that the items sought to be seized will be found in the place to be searched").

Ms. Jernigan alleges that the police officers did not have reasonable suspicion that she or her passenger had done anything illegal. (CHRO Compl. at 5, 10.) Ms. Jernigan states no vehicle infraction was charged, nor did one exist. (*Id*. at 9.) As a result, it appears that Ms. Jernigan could state a plausible claim against the individual police officers under the Fourth Amendment regarding her removal from the vehicle and the search of her person and vehicle. However, this claim cannot proceed against the individual police officers in their individual capacities because they are not specifically identified in Ms. Jernigan's complaint or named as defendants. The complaint also fails to state whether Ms. Jernigan seeks injunctive relief, declaratory relief, or money damages.

Within **30 days** of this order, Ms. Jernigan may file an amended complaint naming the individual police officers as defendants. She must identify the officers with specificity, state the capacity (individual or official) in which each officer is sued, and state the type of relief that she seeks. If she cannot identify the officers, she may sue them as John or Jane Doe defendants and request leave to take discovery from the Bridgeport Police Department to identify the individual officers involved with in incident that she describes.

**2. Fourteenth Amendment Claim**

Ms. Jernigan does not allege facts sufficient to state a claim for race-based discrimination. The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. amend. XIV, § 1. "To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000). "[C]laims of race-based discrimination under the Equal Protection Clause . . . require that intentional discrimination be alleged in a non-conclusory fashion." *Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002). "[T]he mere fact that something bad happens to a member of a particular racial group does not, without more, establish that it happened *because* the person is a member of that racial group." *Williams v. Calderoni*, No. 11 CIV. 3020, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) *aff'd sub nom., Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013). "The naked assertion by [a] plaintiff that 'race was a motivating factor' without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race is too conclusory. . . ." *Yusuf v. Vassar College*, 827 F. Supp. 952, 955–56 (S.D.N.Y. 1993), *aff'd in part, rev'd in part on other grounds*, 35 F.3d 709 (2d Cir. 1994).

Here, Ms. Jernigan alleges that she was stopped and searched because of her race and color. (CHRO Compl. at 10-11.) Apart from that bare assertion, she does not allege any facts suggesting that the officers intentionally discriminated against her because of her race, or that she was treated differently than similarly situated individuals of other races. *See LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980). She has therefore failed to state a claim under the Equal Protection Clause against the police officers in their personal capacities.

## V.     Conclusion

For the reasons stated above, Ms. Jernigan's complaint against defendant City of Bridgeport Police Department is DISMISSED without prejudice. Within **30 days** of this order, Ms. Jernigan may file an amended complaint and amended motion to proceed *in forma pauperis* in which she attempts to address the defects identified in this ruling. If Ms. Jernigan seeks to bring claims against any police officers in their individual or official capacities, she must (1) identify each officer and the capacity in which that officer is sued and (2) clearly state the relief sought against that officer.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           June 27, 2019